## CIRCUIT COURT OF ARLINGTON COUNTY

Pentagon Ventures, Inc.

v.

Freeman & Sherburne, Inc., et al.

July, 1978

Case No. (Law) 18857

By JUDGE CHARLES S. RUSSELL

Pentagon Ventures, Inc., sued Freeman & Sherburne, Inc., Howard W. Mills, the President of Freeman & Sherburne, and Harford Mutual Insurance Company for a "business interruption" loss sustained when Plaintiff's motel suffered an extensive fire on May 21, 1976. The evidence showed that Mills, acting for Freeman & Sherburne, Inc., agent for Harford, had promised business interruption insurance ordered by the Plaintiff, that Harford had accepted the coverage which Mills had placed but that Mills, through negligent error, had failed to mark the insurance application by checking the proper box showing the request for "gross earnings loss" insurance, but that the company would have written a policy covering such loss if the application made out by Mills had called for it. The Court entered Summary Judgment on the issue of liability in favor of the Plaintiff against all Defendants and submitted the matter to jury trial for a hearing on damages. On November 22, 1977, the jury returned a verdict in the Plaintiff's favor against all Defendants in the amount of $13,500.00.

Harford cross-claims against the other Defendants saying that they were its agents with respect to the Plaintiff, that their negligence in properly filling out the application after having assured the Plaintiff

of coverage, exposed them to liability to the Plaintiff and that they are entitled to indemnity for the loss proximately caused by the agent's negligence. In this connection at the hearing on the cross-claims on June 19, 1978, Harford introduced evidence that the agent had no power to bind the company, but that the agent was entitled to solicit insurance and forward applications which would be considered by the company's home office in Richmond, Virginia, that an application had been thus sent to the home office and approved prior to the fire, but that it lacked any reference to "gross earnings loss" because of the agent's negligence. The company would have written such coverage had the agent requested it. The amount of any additional premium which would have been charged therefor was not shown by the evidence.

Harford also offered evidence to the effect that it was a small company which routinely reinsured most of its risks. In this particular case, it reinsured 95 percent of the various amounts of coverage written on Plaintiff's motel with American and German insurance companies, retaining only 5 percent of the risk for itself, and divided the premiums proportionately. These reinsurers paid 95 percent of the fire loss under their coverage. If Harford had been notified of the "gross earnings loss" coverage, it would have reinsured 95 percent of that likewise. Accordingly, had it not been for the agent's negligence, the company's loss in this case would have been only $675.00, or 5 percent of $13,500.00.

The agents defend against the claim for indemnity by reliance on a strong line of cases, the most recent being *Holtzman v. K & T Company, Inc., et al.,* 375 A.2d 510, decided by the District of Columbia Court of Appeals on June 27, 1977. This case held:

> When an agent has the authority to bind the insurance company, and it is undisputed that the company would have accepted the risk, the company's loss is limited to the difference, if any, between the premiums paid and the premiums that would have been paid had the policy issued included the coverage agreed upon.

An examination of these authorities indicates that each of them is premised upon the agent's authority to bind the company. In such cases the company would never

have had any opportunity to decide whether or not to write the coverage or to limit or reduce its liability before becoming committed to a third person. In such cases the company has placed itself entirely in the hands of the agent, so long as the agent acts within the scope of his contractual authority granted by the company in advance. In this case the company had reserved to itself the right to pass upon each application before becoming committed to an insured. This was done not only in order to give it the opportunity to refuse or limit its risk, but obviously to give it time to obtain reinsurers before it became committed on a policy. This reservation of power by the company was a secret as to the insured and did not bind the latter, as to whom the agent had apparent authority. However, as between the company and the agent, the agent had a duty not to commit the company without its consent and to make applications for insurance in advance of commitment in order to furnish the company an opportunity to obtain reinsurance. This distinction seems to me to be fatal to the agent's defense. It appears from the evidence that the agent's negligence in this case obligated the company to liability to a third party and deprived it of the opportunity to limit its risk by reinsurance. The agent's negligence was the direct proximate cause of the company's loss. The company was exposed to a claim at the Plaintiff's hands amounting to $13,500.00, of which it would have been responsible in any event for $675.00, 5 percent of the loss, since it is undisputed that the company would have written this coverage had the application furnished by the agent mentioned it. The company's net exposure was thus $12,825.00. It is stipulated that the parties have, without prejudice to the cross-claim, paid the Plaintiff $6,750.00 each, satisfying Plaintiff's judgment in full. The agents are entitled to credit for this amount. Judgment will be entered on the cross-claim against the agent in the amount of $6,075.00.